UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE CLOROX COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SSARM INCORPORATED, a New York corporation; JADE TRADING CORPORATION dba WARBIES DEALS, a New Jersey entity; MACBY S., a New Jersey entity; LAVONNA'S PLACE LLC DBA LAVONNA'S PLACE, a Colorado limited liability company; and DOES 1-100,<br><br>Defendants. | CIVIL NO. 23-4122-ZNQ-RLS<br><br>FINAL JUDGMENT AND PERMANENT INJUNCTION RE: SSARM INCORPORATED, MACBY S., AND LAVONNA'S PLACE LLC |

Plaintiff The Clorox Company ("Plaintiff" or "Clorox") filed a Complaint on August 1, 2023 alleging false advertising, counterfeiting, trademark infringement, trademark dilution, unfair competition, and intentional interference with prospective economic advantage against SSARM Incorporated ("SSARM"), LaVonna's Place LLC dba LaVonna's Place ("LaVonna's Place"), and Macby S. (collectively, "Defendants") (identified in **Schedule A** attached hereto), as well as an *ex parte* application for Temporary Restraining Order, Order to Show Cause for Preliminary Injunction, Order to Disable Defendants' Listings, Order Restraining Assets, and Order for Expedited Discovery, all pursuant to the Trademark Counterfeiting Act of

- 1 -

1984, 15 U.S.C. § 1116, Rules 65(b) and (c) of the Federal Rules of Civil Procedure, and Rule 65.1 of the Local Civil Rules of the United States District Court for the District of New Jersey. Dkts. 1, 12-18.

The Court entered a Temporary Restraining Order against Defendants on August 10, 2023 ("TRO"). Dkt. 26.

Defendants were served on August 11, 2023 and August 14, 2023. Dkt. 35. On August 22, 2023, at 2:00 p.m., Plaintiff appeared at a show cause hearing. None of the Defendants appeared.

The Court entered a Preliminary Injunction against Defendants on August 23, 2023 ("PI"). Dkt. 39.

Having reviewed Plaintiff's Motion for Default Judgment (Dkt. 48), and no opposition having been filed, the Court now enters final judgment based upon the following undisputed facts ("Order"). Each party will bear its own fees and costs in connection with this action.

I.   **FACTUAL FINDINGS AND LEGAL CONCLUSIONS**

   A.   This Court has subject matter jurisdiction over this lawsuit and personal jurisdiction over Defendants. Venue is proper in this Court.

   B.   Clorox is the exclusive owner of numerous trademark registrations worldwide for, and common law rights in, the CLOROX® trademark, the CLOROX Diamond Logo Mark, and a variety of trademarks that incorporate these marks. *See* Dkt. 1 ¶ 17; Dkt. 14-18 and 14-19 (Declaration of Maya Clark ("Clark Decl."), Exs.

G and H). Clorox is the exclusive owner of trademark registrations for, and common law rights in, its Disinfecting Wipe Canister Trade Dress and related packaging logos, as defined and set out in in Paragraphs 13 and 17 of the Complaint. *See* Dkt. 1 ¶¶ 13, 17; Dkt. 14-20 (Clark Decl., Ex. I). These trademarks and trade dress are referenced collectively as the "Clorox Trademarks."

      C.      The Clorox Trademarks are well-known symbols of Clorox's brand and reputation as a trusted purveyor of cleaning products. The Clorox brand, for example was recently included in The Harris Poll's top-five list of companies with the best reputations among American consumers. Dkt. 15-1 (Declaration of Stephen Klarich ("Klarich Decl."), Ex. A). The Clorox brand was also included among the top-five in both Morning Consult's 2022 Most Trusted Brands report, and Newsweek's 2023 Most Trustworthy Companies list. *Id.* Clorox's Disinfecting Wipes have won multiple awards as well, including NielsenIQ's Global Pack Design Impact Award in 2021. Dkt. 16-1 (Declaration of Deborah Crandall ("Crandall Decl."), Ex. A). The strength of the Clorox Trademarks is illustrated, in part, through its advertising expenditures and the examples of Clorox's ad campaigns. Since 2018, Clorox has spent more than $250 million promoting and advertising its Disinfecting Wipes products and the related trademarks and trade dress. Dkt. 16 (Crandall Decl., ¶ 15). Clorox has partnered with companies ranging from United Airlines to Uber, and from the NBA and WNBA to AMC Theaters, to generate co-branded marketing

material for its Disinfecting Wipes. Dkt. 16 and 16-3 (Crandall Decl., ¶ 18 and Ex. C).

D. Clorox's Disinfecting Wipes are valuable and important components of the company's line of household cleaning solutions. Over the past five years, a subset of the company's records – reflecting only sales through large accounts such as Safeway, Target, Walmart, and similar companies – shows sales of more than 400 million units of CLOROX® Disinfecting Wipes, generating more than $2 billion in retail sales. Dkt. 16 (Crandall Decl., ¶ 20).

E. Through Clorox's consistent advertising and sales of its Disinfecting Wipes and other products displaying the Clorox Trademarks, the Clorox Trademarks have become famous among consumers. Dkt. 1, ¶ 27.

F. To prevent harm to Clorox and consumers caused by Defendants' bait and switch scheme, described in detail in the Complaint, the Court issued a temporary restraining order against Defendants on August 10, 2023. Dkt. 26.

G. Defendants were served with the Summons, Complaint, TRO, and copies of all papers in support thereof on August 11, 2023, August 14, 2023 and August 29, 2023. Dkts. 35 and 43.

H. The Court issued a preliminary injunction against Defendants on August 23, 2023. Dkt. 39.

I. Defendants and Amazon were served with the Preliminary Injunction on August 23, 2023.

J. Defendants, without Clorox's authorization or consent, have used (and, absent an injunction, are likely to continue using) counterfeits or infringements of the Clorox Trademarks in connection with the advertising, offering for sale, sale and distribution of materially different, counterfeit versions of CLOROX® Disinfecting Wipes (the "Counterfeit Products"), the very goods identified in Clorox's federal trademark registrations. Clorox has shown samples of the Counterfeit Products purchased from Defendants, which are materially different from the products advertised and offered by Defendants in that they do not use Clorox's well-known and protected canister trade dress. *Compare* Dkt. 14-1, 14-5, 14-8, 14-11, and 14-14 (Clark Decl., Exs. A-1, B-1, C-1, D-1, and E-1 (showing Defendants' product listings offering Disinfecting Wipes in canister packaging)) *with* Dkt. 14-4, 14-6, 14-10, 14-13, 14-16 (Clark Decl., Exs. A-4, B-2, C-3, D-3, and E-3 (showing test purchases from Defendants)). Consumers' appreciation of the material difference (and Defendants' deception of those consumers) is illustrated, by example, by the dozens of critical reviews from customers, many of whom specifically state that they would not have purchased the product that Defendants ultimately shipped.

K. The products at issue in this case are therefore counterfeits, as defined by the Lanham Act, because Defendants (a) knowingly and intentionally used

Amazon listings for the canister packaging version of the Disinfecting Wipes, including assets displaying the Clorox Trademarks, and (b) sold materially different "flat pack" versions of Clorox's product, without authorization, to unsuspecting consumers. *See, e.g., Coty Inc. v. Cosmopolitan Cosmetics Inc.,* 432 F. Supp. 3d 345 (S.D.N.Y. 2020) (recognizing counterfeiting claims based on material differences in products and product packaging where defendant, a fragrance retailer, was selling unauthorized units of plaintiffs' fragrances from which the production codes had been removed, or on which the production codes had been obscured, stickered, or otherwise mutilated).

L.   Defendants intentionally used the Clorox Trademarks with intent to deceive purchasing decisions of a substantial portion of the intended audience.

M.   Defendants have made literally false statements about the Counterfeit Products by intentionally and maliciously stating to consumers that they carry CLOROX® Disinfecting Wipes packaged in Clorox's iconic canister, displaying Clorox's Disinfecting Wipe Canister Trade Dress, which actually deceived and tends to deceive a substantial portion of the intended audience, and is material to consumers' purchasing decisions. Consumers' reliance on Defendants' false statements, and the resulting harm to consumers and to Clorox, is illustrated through the 117 negative customer reviews in the record. *See* Dkt. 14-3, 14-7, 14-9, 14-12 and 14-15 (Clark Decl., Exs. A-3, B-3, C-2, D-2, and E-2).

N.     Defendants' continued use of infringing, counterfeit, and/or falsely-advertised versions of the Clorox Trademarks will cause irreparable injury to Clorox and will harm the public if an injunction does not issue, in that Defendants are likely to continue to advertise, offer for sale, sell and distribute the Counterfeit Products bearing the Clorox Trademarks, to the detriment of Clorox's goodwill and business reputation. Dkt. 15 (Karich Decl., ¶¶ 20-22); Dkt. 16 (Crandall Decl., ¶¶ 21-22).

O.     Defendants do not have an overriding legitimate interest in continuing to advertise, sell or distribute the Counterfeit Products or use the Clorox Trademarks in connection with CLOROX® Disinfecting Wipes. Accordingly, Defendants cannot suffer irreparable harm to their legitimate interests if an injunction issues.

## II.   FINAL JUDGMENT, PERMANENT INJUNCTION, AND AWARD

It is hereby ordered and adjudged as follows:

A.     The Motion for Default Judgment (ECF No. 48) is hereby GRANTED; Judgment is entered in favor of Clorox against Defendants. Defendants shall be liable to Clorox in the following amounts:

Against LaVonna's Place: $50,000.00 per counterfeit mark, per type of good sold, offered for sale, or distributed, for a total of $150,000.00 in damages.

Against Macby S.: $100,000.00 per counterfeit mark, per type of good sold, offered for sale, or distributed, for a total of $300,000.00 in damages.

Against SSARM[1]: $200,000.00 per counterfeit mark, per type of good sold, offered for sale, or distributed, for a total of $600,000.00 in damages.

B.  Without limitation as to other means of enforcement of this Final Judgment, Clorox may collect the foregoing damages awards from the Amazon seller accounts belonging to these Defendants, as identified in **Schedule A**. Amazon shall facilitate such collection, including by transferring amounts up to the foregoing damage award totals to Clorox within ten (10) days of receiving email notice and payment details from Clorox through the contact information in paragraph E below.

C.  Defendants shall, within ten (10) days of entry of this Final Judgment and Permanent Injunction, contact Clorox's counsel to coordinate delivery of remaining inventory of the Counterfeit Products for recycling or destruction, by sending an email to ryan.bricker@versolaw.com and paymaneh.parhami@versolaw.com. Defendants shall provide Clorox's counsel with verification of the shipment, including a tracking number, no later than five (5) days after receiving instructions for recycling or distribution of such remaining inventory from Clorox's counsel.

D.  Commencing as of the "So Ordered" date of this Final Judgment and Permanent Injunction, Defendants, any of their officers, agents, privies,

---

[1] This award would apply to both the SSARM and Serenity Satchel accounts. *See* Dkt. 1 ¶ 51.

shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns and all those persons in concert or participation with them, and any entity owned or controlled in whole by them, who receives actual notice of this Order by personal service or otherwise, are hereby permanently enjoined and restrained, directly or indirectly, from doing, authorizing or procuring any persons to do any of the following:

1. Using any of the Clorox Trademarks, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the Clorox Trademarks, in or as part of any mark, design or logo or otherwise on or in connection with any Clorox Disinfecting Wipes or on or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination or distribution of any Clorox Disinfecting Wipes;

2. Using any of the Clorox Trademarks – or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the Clorox Trademarks – in or as part of any mark, design or logo or otherwise on or in connection with any goods in the manner complained of in the Complaint, any similar

    manner to the scheme identified in the Complaint, or in a manner that violates a right owned by Clorox;

3. Using any of the Clorox Trademarks, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the Clorox Trademarks in or as part of any logo, business name, trade name, website identifier, website address, domain name, e-mail address or in any other means of identification of Defendants as a source of such Clorox Trademarks;

4. (Except as necessary for the purpose of destruction of Counterfeit Products) packaging, importing or transporting any product that is not a genuine product of Clorox bearing any of the Clorox Trademarks or any mark that is a simulation, reproduction, copy, colorable imitation, confusingly similar variation, or materially different version of any of the Clorox Trademarks;

5. Using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that Defendants are associated with

Clorox or that any product imported, manufactured, distributed, or sold by Defendants is in any manner associated or connected with Clorox, or is authorized, licensed, sponsored or otherwise approved by Clorox;

6. (Except as necessary for the purpose of destruction of Counterfeit Products) transferring, consigning, recycling, or destroying any goods, packaging or other materials in Defendants' possession, custody or control bearing a design or mark substantially identical to the Clorox Trademarks, or records associated with Defendants' sourcing, promotion, or sale of such goods, packaging, or other materials;

7. Purchasing any of the Clorox Trademarks in connection with any sponsored advertising on the Internet or using any of the Clorox Trademarks in any source code or metatags or otherwise using the Clorox Trademarks or trade names such that a search for Clorox on the Internet will cause any domain name, website or advertisement for Defendants, or any company or business that is owned or controlled by it, to appear in search results;

- 12 -

8. Engaging in any other activity constituting unfair competition with Clorox, or constituting an infringement of any of the Clorox Trademarks;

9. Engaging in any activity that constitutes false advertising of any products bearing the Clorox Trademarks;

10. Engaging in any activity that dilutes or tarnishes, or is likely to dilute or likely to tarnish, any of the Clorox Trademarks; and

11. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs D.1 through D.10 above, or taking any action that contributes to any of the activities referred to in subparagraphs D.1 through D.10 above, or any other activity that consists of or contributes to the sale of counterfeit, infringing, or falsely-advertised products bearing any of the Clorox Trademarks, including but not limited to building or creating websites or product listings for others, hosting websites or product listings for others, or providing technical or other support for any e-commerce transactions that concern or relate to the sale of counterfeit or infringing goods.

E.  Commencing as of the "So Ordered" date of this Final Judgment and Permanent Injunction, Defendants, and all persons in active concert and participation with them who receive actual notice of this Order, including Amazon, are hereby permanently enjoined and restrained, directly or indirectly, from doing, authorizing or procuring any persons to do any of the following:  Instructing, aiding or abetting Defendants and/or any person or business entity to engage in any of the activities referred to in subparagraphs D.1 – D.5 above, including, without limitation, by providing services necessary for Defendants to continue to offer for sale and/or sell Counterfeit Products in violation of this Order.

E.  As sufficient cause has been shown, service of this Order shall be made on and deemed effective if it is completed by the following means:

1.  On Amazon: Delivery of: (i) a copy of this Final Judgment and Permanent Injunction via Federal Express to Amazon.com, Inc. at Corporation Service Company 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501, and (ii) a PDF copy of this Final Judgment and Permanent Injunction via electronic mail to Stephany Musil at ostephmu@amazon.com;

2.  On SSARM: Delivery of a PDF copy of this Final Judgment and Permanent Injunction by email to n559amazon@gmail.com and serenitystore1@yahoo.com;

3. On LaVonna's Place: Delivery of a PDF copy of this Final Judgment and Permanent Injunction by email to lavonnasplace@yahoo.com; and

4. On Macby S.: Delivery of a PDF copy of this Final Judgment and Permanent Injunction by email to macbystore@yahoo.com.

F. This is a final judgment as to all claims asserted against Defendants related to the Counterfeit Products, promoted or offered for sale prior to the date of entry of this Final Judgment and Permanent Injunction. Both parties shall bear their own costs.

G. If Clorox commences an action for enforcement of this Judgment, the prevailing party shall be awarded reasonable attorneys' fees and costs from the other party, for both the action enforcing this Judgment and the underlying litigation.

H. The Clerk's Office is instructed to mark this matter CLOSED.

Dated: May 1, 2024

_____
Zahid N. Quraishi
United States District Judge

# SCHEDULE A

| Defendant | URL to Unique Seller ID / Storefront | Shipping / Return / Warehouse Address | Return Address from Test Purchase |
|---|---|---|---|
| SSARM Inc. | https://www.amazon.com/sp?ie=UTF8&seller=A31BVB837D1QQV&isAmazonFulfilled=0&asin=B0C3N72PMN&ref_=olp_merch_name_1<br><br>https://www.amazon.com/s?me=ACJZZ9CEGOXE8&marketplaceID=ATVPDKIKX0DER ("Serenity Satchel" account) | 465 Industrial Way West, Eatontown, NJ 07724 | 465 Industrial Way West, Eatontown, NJ 07724 |
| Jade Trading dba Warbies Deals | https://www.amazon.com/sp?ie=UTF8&seller=AWXKYXZF9KES6&E2808Casin=B00B71EKSY&ref_=dp_merchant_link | 541 Industrial Way W Eatontown, NJ 07724 | 539 Industrial Way W, Eatontown NJ, 07724 ar |
| Macby S. | https://www.amazon.com/sp?ie=UTF8&seller=A3PQ542M1FC1RH&asin=B09B8YF9YN&ref_=dp_merchant_link | 175 Monmouth Road, Room 220C, West Long Branch, NJ 07764 | 175 Monmouth Road, Room 220C, West Long Branch, NJ 07764 |
| LaVonna's Place | https://www.amazon.com/sp?ie=UTF8&seller=A3B4TDTZBIQCWV&asin=B084GWGX9Y&ref_=dp_merchant_link | 541 Industrial Way West, Suite A-613, Eatontown, NJ 07724 | 541 Industrial Way West, Suite A-613, Eatontown, NJ 07724 |